Cases 13-4236 and 13-4237 U.S.A. v. B Miller Oral argument, 15 minutes per side Ms. Malone for the appellant Good morning. May it please the court. My name is Vanessa Malone, and I am here on behalf of the appellant B. Elise Miller. And I'd like to reserve four minutes for rebuttal. This morning, I'd like to focus our discussion on a couple of areas which were not addressed as fully as I would have liked in the briefing. And that is with regard to the district court's failure in this case to make any ruling as it relates to the agency argument that developed during the suppression hearing in November of 2012. Excuse me. What sort of issue did the court not discuss? The district court provided its ruling, and it discussed the suppression issue as it related to the search of Ms. Miller's business, which was Three Rivers Infusion Pharmacy and Miller Pharmacy in Coshocton. And it also discussed part of the suppression motion as it related to the search of her private residence at 1910 Atwood Terrace, also in Coshocton. But as the testimony developed at the suppression hearing, however, the argument about agency and whether or not Ms. Miller's maid, Mary Richards, was acting as an agent for the government when she discovered and she reviewed files that were found in an attic. Other than the testimony from which such an argument could have been developed, other than the testimony, where did you actually present that argument to the district court? Because it's not in your motion. Right. The initial motion was filed. The initial suppression motion was filed in 2010 in this case, which was long before Ms. Miller was even indicted on the actual health care fraud case that was the underlying offense for the obstruction and the concealment of records cases under case number 33. 331 and 46 in 2010. However, as the testimony developed, a supplemental motion was filed by counsel for Dana Campbell. Dana Campbell is Ms. Miller's husband, and his attorney filed a supplemental motion on December 5th of 2012 that supplemented the arguments that had developed at the hearing regarding the agency argument. And that filing was made five days prior to Judge Wells' ruling on the order. Ordinarily, in motions to suppress, is this what this was? Yes, it was, Your Honor. Ordinarily, those are based upon the view and consideration of the law on the affidavit and the search warrant. Now, how did all this other evidence come in, bringing in Ms. Richards and anybody else? Ms. Richards was one of the witnesses on the affidavit for the search of the Atwood Terrace residence. That affidavit was drafted in small part by former agent Holmes, who did testify through deposition. Well, I don't understand what was supposed to be shown during this hearing, because it usually just goes on the affidavit and search warrant on most searches unless there's some underlying issue. That's correct, Your Honor. But the affidavit submitted in this case for the search warrant for the residence included three statements. And these women testified at the suppression hearing, and they averred at the suppression hearing that the statements that were attributed to them in the search warrant were not something that they said. They said they were false. That's not what they said, right? That's exactly right. And Ms. Richards also testified, because if you look at the affidavit for the search warrant for the Atwood Terrace residence, there's nothing connecting any of the information in that particular affidavit to the actual personal residence of Ms. Miller except for paragraph 28. And that paragraph was from Ms. Richards. And Ms. Richards indicated – well, the paragraph indicated that Ms. Richards inadvertently found a box in an attic while she was searching for Christmas decorations that included files that were the subject of an administrative subpoena that had been previously issued to Ms. Miller as owner of Three Rivers Infusion Pharmacy. And so these women testified at the hearing. And through that hearing, it was determined that Ms. Richards, when she found the box, she had no idea what the box of files entailed. But she had been used as a source by the agents throughout this entire – what ended up being a year-long investigation into the alleged health care fraud of Ms. Miller at Three Rivers. What part of that did she say she didn't tell this agent? Well, the part that she said that she did not discuss with the agent was related to the information that she gleaned from – that was gleaned from the other witness, specifically Kay Weisenberg, who said that – who's – the statement in the affidavit says that Richards told her hearsay information that there was a tote in a garage at some point in 2008 that held Synergist files. Ms. Richards denied that. She denied that she told her that they were Synergist files. She said they were medical mutual files because that's what was on the outside of the box. When the inquiry with Ms. Richards continued concerning whether or not – just to how the discovery of the box in the attic, which occurred at least a year after the garage box incident, Ms. Richards indicated that she had been looking for Christmas ornaments or decorations, saw an unfamiliar packed box inside of a garbage bag, and she looked in the bag and she saw the files. And she says – and this is how she testified – she said, I guess this is what they were looking for. And so she made the phone call to Agent Holmes. And a couple days later, Agent Holmes calls her back and said, can you go to that box, read some names off the files, give me the names, and then – and give me the names. And so Ms. Richards, who had no reason to go back to the box again, no reason to read names off of these patient files, she followed her instructions and gave them the names. She was entitled to be on the premises, right? Yes, she was the housekeeper. That's correct. She had a right to be there. But there was also testimony earlier in her testimony. She said that there are areas where Ms. Miller and Mr. Campbell did not permit her to go into. She wasn't permitted to go into the patient. I want to go back to this point about Ms. Miller being an agent of law enforcement. And there are two questions. With respect to her functioning as an agent of law enforcement in this particular ordeal, do you argue that she was functioning as an agent of law enforcement when she first discovered the bag? Or only after she reported the find that she went back and gave information in response to their request? I am arguing that it's the second scenario, that she inadvertently found the files. That's fine. So if she was not acting as an agent of law enforcement on the initial find, when she called and said, I think these are files that you may have been looking for, was that not enough for them to get some probable cause? And if it was, what is the prejudice or the harm then of her simply going back to a bag that she's already discovered and reading information and writing it down? Because that's what she did. She looked initially, and then she came back in response to their request and wrote something down and then communicated that. Okay. I believe that when she first looked at the bag, she pulled the bag back, and this is her testimony, and she saw that there were Manila file folders. And so that triggered her memory because she had been repeatedly reminded by the agents to keep lookout, make sure there's nothing, look and see whether or not some documents or boxes move in and out of the home, which is problematic in and of itself. Yes. So why didn't that get put in your motion, and why wasn't that argued to the court that decided the suppression motion? Well, there was no argument after testimony. I believe that the time had gone relatively longer than any of the parties had, and the government can speak to the time. Let me put it a different way. Why would the court deciding your suppression motion have known or had any reason to think that you were characterizing Ms. Richards as an agent of the government when she made this discovery? At the time of the hearing, because this developed during the hearing, I don't believe that there was the opportunity for her to make that determination, other than the fact that the questioning of Ms. Richards lends itself to the argument that was later presented in the motion. They should have constructed that argument. Is that your position? I'm sorry? So the court should have constructed that argument? No, not the court should have constructed the argument, but when the follow-up motion to the hearing was submitted, that structured the argument with respect to the agency, which admittedly was not raised prior to the hearing and sort of genetically developed during her testimony. I don't believe that even the defense was aware of the sequence of events that happened at the time of the discovery of the files. And then the second part of the question was that how is reading names any more? Ms. Richards had no idea what those files were. She had no experience, and Ms. Miller had been a pharmacist for many years, and she had many other files other than Synagis files, and there was no way for the government to know whether or not those files were responsive to the administrative subpoena without having the names. So Ms. Richards didn't write the names down at the time she discovered the box. She was told to go back to the box and do that, and that's her argument. And we believe that because there was no factual findings, based upon the later filed motion, that remand is in order. Thank you, counsel. Thank you. Good morning, Your Honors. Rebecca Lutzko on behalf of the United States. Your Honors, I think you've already hit the nail right on the head here of the crux of the issue in this case. I won't recite the facts unless there's any facts that you believe are unclear from the presentation already set forth in my brief. The issue with respect to the search of the residents and the finding of these files is supported by the record for three independent reasons. First of all, as you know, the standard here is whether there was clear error on any of the factual findings made by the district court and whether there was a legal issue to that extent. The issue is de novo. The district court did address, albeit not in any great detail, the finding of these files by the housekeeper, Ms. Richards, and the agency argument. Not in any great detail. As your court has hit on the head, it was not raised until after the hearing. And when it was raised after the hearing, as Judge Donald pointed out, there are two questions, whether it's initially an agency argument or whether it's only after she speaks to Special Agent Holmes and then goes back to get the names. Now, on the first one, I believe the defense has conceded that there is no government agency argument with respect to her initial search, and I believe that is fully supported by the facts. The housekeeper was looking for a Christmas tree, opened a bag, and saw. Well, counsel did say, albeit at the end, that Ms. Richards had been advised a number of times by the agents to keep your eyes open, be looking for stuff. Why is that not sufficient to make her an agent? For two reasons. First of all, I will note that when this was raised in the supplemental motion, I don't believe that issue was raised. The only issue that was raised was whether her going back to the files and getting the names somehow created an agency. But second, Your Honor, merely asking a person to keep their eyes open or to ask a person to be cooperative with the government isn't in itself sufficient to create that government agency. The test is a significantly higher test. The government needs to know that a search is going on and has to somehow have instigated it, and the private person who's conducting that search must be intending to do so on behalf of the government. And neither of those prongs are met in this case. And in particular, Ms. Richards testified that she was never directed by the agents to search for files. They merely asked her to keep an eye out, and if she saw something, to let them know. So that agency hasn't been created. Did the court make any finding about whether the warrant was valid disregarding any of this agency? Because this part about Ms. Richards being told by the agent to go back in there and all, that wasn't in the affidavit at all, was it? No, it wasn't. And, actually, that is the single most important reason why that warrant is valid in this case. As I mentioned at the beginning, there are three reasons why this whole agency reason argument doesn't matter. But the first and foremost of which is that the warrant itself doesn't rely on any of those names. It simply relies on the information that Ms. Richards initially found and reported to the agency. Ms. Richards initially found and reported to the agent simply that she opened a garbage bag. She saw what she recognized as patient files and, therefore, reported that to Special Agent Holmes. That's what he put in his warrant. So the whole thing about her going back and looking at names, none of that is in the warrant. None of that was part of what the magistrate judge considered, and, therefore, because it's not within the four corners of the warrant, it's completely immaterial. So much of what I argue in my brief is really more academic than anything else because even if you were then to somehow view what is written in that affidavit as relying on the second search, which I don't think is factually supported, Richards did not exceed the scope of her initial search. There is no testimony that she rifled through the box to get those names. In fact, I believe what she testifies is that she looked at the first couple of files, told Special Agent Holmes what it was, and left it at that. She didn't go search any other areas of the house. She didn't go search a desk. She didn't do anything that in any way materially was beyond the scope of her initial private search. The officer who made the affidavit, did he say anything about Richards identifying specific names? No, he did not. What he said was that she found a garbage bag with a tote of patient files in it up in the attic and that there were also synergist-related files. So the closest he comes to any specificity is specifying the type of drug that's involved in this case. There was also testimony at the hearing regarding earlier statements that Mary Richards made to Special Agent Howe regarding the fact that she understood they were looking for synergist files and that she had previously seen synergist files in the home back in December of 2008, but that those files had disappeared. As far as the district court's findings, Your Honor, I would note that the district court did make two findings that at least touch on this issue. She says that the affidavit, as presented by Special Agent Holmes, aside from some poor phrasing relating to the number of files, provided sufficient evidence to give the magistrate judge a basis to find evidence of a health care fraud violation at the residence. The district court further found that Richards' testimony corroborated not only Special Agent Holmes and Special Agent Howe's testimony, but that it corroborated the information in the affidavit. Did the affidavit say it was synergist files? What it said was that it was, I don't want to mess up the language, that Mary Richards advised the affidavit that she found a bag full of patient files in the home of Elise Miller and Dana Campbell, where she worked. In addition, there are some other files which also appear to contain synergist information in a tub which was inside the black garbage bag. All of those files were located up above the garage in that tote. And further, Your Honor, even if you were to remove the language about the synergist files, which I don't think is warranted here, but even if you were to remove the synergist part of that and simply rely on the fact of the patient files, that is the salient point here. That is sufficient to provide probable cause. As Your Honors are well aware, that affidavit lays out a series of events where the employees say that we saw synergist-related files at the time of the search. The agents missed them. I'm sorry, the search of the business. That the agents either missed them or for whatever reason they weren't taken. That a subpoena was issued and then those files disappeared. Testimony was further provided at the hearing through the Special Agent Tom Flewhart, who testified that Madeline K. Weisenberg had told him that those synergist files disappeared and that they had been taken to the home of Ms. Miller. And further that, Ms. Weisenberg said Ms. Richards told her she saw them there. But Weisenberg denied that, right? Weisenberg did deny that and the court made a credibility determination that her testimony was not credible in this regard and that Special Agent Flewhart's was. Okay. I would move then very quickly to the other issue that is presented for your review, which is the search of the business and whether it exceeded the scope. And more particularly, whether the particular requirement of a search warrant was met. As your honors are aware, there are three contiguous buildings that are at issue in this case. 234 is the business address of Miller Pharmacy. 238 Main Street is the business address of Three Rivers Pharmacy. And then there is a building that these are all adjacent to one another attached. And that is 240 and 240 1⁄2. The testimony at the hearing was that the agents went into 234 and 238. They searched those premises to include the upstairs portion. And that the upstairs portion, the second floor that they searched, everything was contiguous. There were no closed entries or locked doors or anything. Are you arguing basically that as a part of this search, since there were no separations and they were, in fact, contiguous, that if they did wander into a part or an address that was not contained in the search that the Leon Goodfaith exception applies? Ultimately, at the end of the day, yes, your honor, I would. But even prior to that, the district court found there was no evidence presented by the defendants that they did wander outside of the second building. There's no evidence that the second floor of that building that's above the 240 address, if the agents even went in there- Now, one of those buildings had three floors, didn't it? Correct, it did. That was the third building. And the one that was 240 was the address. But as you go up the stairs, the testimony was that the agents were only in everything that was contiguous and open. And I believe the law is, in particular the Gamboa case, which I cited, and also Nichols, that you can search the area particularly described in the search warrant and areas not noticeably separate from the described structure. And in that Gamboa case, it's almost virtually identical to this case. There, the business address, there were two business addresses for one business, and the defendant there had argued that because they didn't put the second address in the warrant, wandering into any part of that that was the second address, somehow invalidated the warrant, and the court found that it did not. Did anybody testify that the search went into the area above these 240 and 248? No, they did not. Special Agent Unkefer was the primary person who testified in this regard, and his testimony was that it was his understanding that at all times they were in either 234 or 238. So did anybody for the defendant say anything to the contrary? They did not. So the idea that they might have been in an area not specifically named in the warrant came up at what point? Also came up at the hearing. That was never raised in any pretrial brief. It was addressed in the supplemental motion. If there are no further questions from the court, I will sit down. Thank you. I think there are not. Thank you, Your Honors. Thank you. Thank you, just briefly. And I'll touch on the last part first. Regarding the search of 240 Main Street, which was a clearly different building, the argument was not raised in the first suppression motion in light of the fact that the argument developed based upon the sketches presented by Agent Howe. Well, the sketches were presented by the defense at Exhibit J at the suppression hearing, and that exhibit indicated that Agent Howe had made sketches of the search, as was testified to by Agent Unkefer. When you say that there was a clearly different building, is that statement based on the view of the exterior sketches of the building, or is it based on something else? Because your adversary says that once the search commenced inside that these buildings were basically continuous and there was nothing that would specifically identify separations. So what's that statement that they were clearly separate based on? Well, the buildings were separate, and if you would have the opportunity to look at Exhibit J, you will see that the sketch indicates that there is a wall on the east side of Building 238 Main, and that wall separates 238 from 240. There is also, I believe it's the last page of the sketch, is that the floor that they're on at that point, and it doesn't really indicate the floor, it just says the east side of 238 Main. Well, 238 Main, I don't know if anybody's familiar with downtown Coshocton. These are older buildings, and they're narrow, long buildings. And the pharmacy is here. The infusion pharmacy was right next door. But even those buildings that were clearly connected were not physically connected. As you go to the pharmacy, there's no common area open up to the infusion pharmacy. Those two buildings were completely separate, just as the 238 was completely separate from 240. There were doorways that you could traverse across, because Ms. Miller did, at one point, own all of those buildings. But there was specific doorways that they went through. And on the sketch, you can see that there's a stairway leading up to the third floor. And interestingly enough, the only sketch that Agent Howe indicated was the east side of 238 was the sketch that included the stairs to the third floor. What was found in this other building? Did anybody ever testify to that? There was not testimony, because, again, this developed at the hearing. But afterwards, the legend that was testified to at the hearing indicated that each room that they had gone into, there was a legend. There was a number letter legend as to what documents were found where. There were several documents and several files from one of the officers of Three Rivers that was in this section. So it's not exactly clear as to each document what was in that part of the building. The district court, as I remember the order on suppression, the district court found that the evidence didn't support a finding that the officers had gone up into the third floor, for example, that they had searched beyond the actual buildings that were specifically described in the warrant. What would we look to to find that that was a clearly erroneous finding? Well, the only thing that we have, Your Honor, is the fact that our client knows that certain offices were in the 240 building and the fact that on the agent's sketch, there are stairs that lead to the third floor. How would we reverse what the district court did as being clearly erroneous on that basis? Well, granted that was not as developed as it could have been based upon the testimony that was presented. It would be difficult to reverse that. Thank you. The case will be submitted. Clerk may call the next case.